Michael R. Rhodes (CA SBN 319432)
mrhodes@desmaraisllp.com
Emily Weber (CA SBN 348798)
eweber@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

Tamir Packin (CA SBN 317249)
tpackin@desmaraisllp.com
Lindsey E. Miller (pending *pro hac vice*)
lmiller@desmaraisllp.com
Ryan Throne (pending *pro hac vice*)
rthrone@desmaraisllp.com
Amy Wann (pending *pro hac vice*)
awann@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

*Counsel for Plaintiff Cisco Systems, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>DYNAMIC MESH NETWORKS, INC. D/B/A MESHDYNAMICS, MESH DYNAMICS, INC., FRANCIS DACOSTA, and SRIRAM DAYANANDAN,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 7,420,952, 7,885,243, 7,894,385, 8,520,691, 11,368,537** |

COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT                                       Case No. _____

Plaintiff Cisco Systems, Inc. ("Cisco") hereby alleges for its Complaint against Defendants Dynamic Mesh Networks, Inc. d/b/a MeshDynamics ("MeshDynamics"), Mesh Dynamics, Inc., Francis daCosta and Sriram Dayanandan (collectively, "Defendants") as follows:

## NATURE AND HISTORY OF THE ACTION

1. This is an action for a declaratory judgment that Cisco does not infringe U.S. Patent Nos. 7,420,952 ("the '952 Patent"), 7,885,243 ("the '243 Patent"), 7,894,385 ("the '385 Patent"), 8,520,691 ("the '691 Patent"), 11,368,537 ("the '537 Patent") (collectively, the "Patents") attached hereto as Exhibits 1-5 respectively.

2. On May 5, 2025, MeshDynamics filed suit against Cisco accusing Cisco of infringing the '952, '243, '385, '691, and '537 Patents. *See Dynamic Mesh Networks Inc. d/b/a/ MeshDynamics v. Cisco Systems, Inc.*, Civil Action No. 2:25-cv-00472 (E.D. Tex.) ("the 472 Litigation"), D.I. 1.

3. MeshDynamics defined the 472 Litigation Accused Products as "'Mesh' Wi-Fi equipment and solutions, including Cisco's Access Points ('APs'), wireless controllers and control systems (collectively, the 'Accused Products')." 472 Litigation, D.I. 1 at 3.

4. On June 6, 2025, MeshDynamics filed a second suit against Cisco accusing Cisco of infringing U.S. Patent Nos. 8,477,762 ("the '762 Patent"), 8,514,852 ("the '852 Patent"), and 9,049,000 ("the '000 Patent"). *See Dynamic Mesh Networks Inc. d/b/a/ MeshDynamics v. Cisco Systems, Inc.*, Civil Action No. 2:25-cv-00606 (E.D. Tex.) ("the 606 Litigation"), D.I. 1 (collectively with the 472 Litigation, "the EDTX Litigations").

5. MeshDynamics defined the 606 Litigation Accused Products as "VoIP collaboration products and solutions, including, for example, Cisco WebEx (the ''762 Accused Products'), and Cisco networking equipment and solutions, including, for example, Cisco SD-WAN solutions and equipment with Forward Error Correction ('FEC') (the ''852/'000 Accused Products') (collectively, the 'Cisco Accused Products')." 606 Litigation, D.I. 1 at 4.

6. MeshDynamics pled that it met multiple times with Cisco in or around 2009 to discuss a potential partnership for wireless mesh networking technology.

7.      MeshDynamics pled that Francis daCosta sent a letter on or about June 22, 2022 and pled that letter placed Cisco on actual notice of its alleged infringement of the Patents.

8.      MeshDynamics took the position in the EDTX Litigations that the claims of the asserted patents are valid and infringed by Cisco.

9.      MeshDynamics voluntarily dismissed the 472 Litigation without prejudice on July 31, 2025.

10.     Defendants' actions have created an actual, justiciable, substantial, and immediate controversy between Cisco and Defendants as to whether Cisco's products and/or services infringe any claims of the Patents.  Moreover, MeshDynamics' dismissal of the 472 Litigation without prejudice demonstrates that it is highly likely that one or more of Defendants will again assert infringement of the Patents against Cisco.  In the meantime, the cloud of infringement allegations hangs over Cisco, its products and/or services.

11.     As set forth below, Cisco does not infringe any claim of the Patents. Therefore, an actual, justiciable, substantial, and immediate controversy exists between the parties as to whether Cisco's products and/or services infringe any claim of the Patents.  A judicial declaration is necessary to determine the respective rights of the parties regarding the Patents and finally and conclusively resolve the underlying controversy, and Cisco respectfully seeks a judicial declaration that the Patents are not infringed by any Cisco products and/or services.

## THE PARTIES

12.     Plaintiff Cisco Systems, Inc. is a Delaware corporation with its principal place of business at 170 West Tasman Drive, San Jose, California 95134.

13.     Founded in 1984, Cisco is the worldwide leader in developing, implementing, and providing the technologies behind networking products and services.  Cisco develops and provides a broad range of networking products and services that enable seamless communication among individuals, businesses, public institutions, government agencies, and service providers.  Specifically, the thousands of engineers who work at Cisco develop and provide networking hardware, software,

and services that utilize cutting-edge technologies to transport data, voice, and video within buildings, across cities and campuses, and around the world.

14. Since its founding, Cisco has pioneered many of the important technologies that created and enabled global interconnectivity. During the past four decades, Cisco has invested billions of dollars, and the time and dedication of thousands of its engineers, in the research and development of networking products and services, culminating in the development of a highly-successful interface and related technologies that have driven the proliferation of Cisco's computer networking technologies and the Internet. As computing technologies evolve and new networking challenges arise, Cisco has continued to innovate and develop new solutions for its customers. No matter what type of network environment—whether large scale Internet backbone networks, enterprise-level local area networks, or networks supporting data centers and today's "cloud computing" services—Cisco's technologies have transformed how people connect, communicate, and collaborate. Cisco remains at the forefront of developing cutting-edge networking technologies and invests billions in ongoing research and development and employed more than ten thousand engineers in California and elsewhere.

15. Cisco's intellectual property rights, including its patent rights, protect the valuable technologies developed by Cisco. As a result of its innovations, Cisco has developed a substantial portfolio of U.S. patents.

16. MeshDynamics is a corporation organized under the laws of the State of California.

17. On information and belief, MeshDynamics' principal place of business is located at 3355 Benton Street, Santa Clara, CA 95051.

18. On information and belief, MeshDynamics' registered agent is Francis daCosta, located at 3355 Benton Street, Santa Clara, CA 95051.

19. On information and belief, MeshDynamics was founded by Francis daCosta.

20. On information and belief, Francis daCosta holds himself out as the founder and chief technology officer of MeshDynamics.

21. On information and belief, Francis daCosta resides in this district at 3355 Benton Street, Santa Clara, CA 95051.

22. On information and belief, Mesh Dynamics, Inc. was a corporation organized under the laws of the State of Delaware.

23. On information and belief, Mesh Dynamics, Inc. was founded by Francis daCosta.

24. On information and belief, Francis daCosta holds himself out as the founder and chief technology officer of Mesh Dynamics, Inc.

25. On information and belief, the work leading to the Patents occurred in or around Santa Clara, CA and/or San Jose, CA.

26. The face of every Patent indicates that every listed inventor of every Patent was located in either Santa Clara, CA or San Jose, CA.

27. On information and belief, one or more of MeshDynamics, Mesh Dynamics, Inc., Francis daCosta, and/or Sriram Dayanandan individually or collectively possess all right, title and interest to the Patents.

## JURISDICTION AND VENUE

28. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*.

29. This Court has subject matter jurisdiction over the claims alleged in this action at least under 28 U.S.C. §§ 1331, 1338, 2201, and 2202, because this Court has exclusive jurisdiction over declaratory judgment claims arising under the Patent Laws.

30. This Court has personal jurisdiction over Dynamic Mesh Networks, Inc. because it is a corporation organized and existing under the laws of California, with its principal place of business alleged to be at 3355 Benton Street, Santa Clara, CA 95051.

31. This Court has personal jurisdiction over Mesh Dynamics, Inc. because, on information and belief, it conducted business in California and employed employees in California.

32. This Court has personal jurisdiction over Francis daCosta because, on information and belief, he resides in this district.

33. This Court has personal jurisdiction over Sriram Dayanandan because, on information and belief, he resides in this district.

34. This Court can provide the relief sought in this Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. § 2201, at least because MeshDynamics sued Cisco alleging patent infringement. MeshDynamics served infringement contentions on Cisco accusing Cisco products and/or services of infringement in the 472 Litigation. Exhibit 6 (472 Litigation Infringement Contentions). While MeshDynamics dismissed the 472 Litigation, it did so without prejudice, reserving the right to file a subsequent complaint(s) against Cisco alleging infringement of the same Patents. Moreover, MeshDynamics' counsel of record in the EDTX Litigations represented that MeshDynamics would later sue Cisco again.

35. Defendants' actions have created an actual, justiciable, substantial, and immediate case or controversy between Cisco and Defendants.

36. Venue in this District is proper under 28 U.S.C. §§ 1391(b) and (c) with respect to Cisco's claims against Defendants.

37. An actual, justiciable, substantial, and immediate controversy exists under 28 U.S.C. §§ 2201 and 2202 between Cisco and Defendants as to whether the Patents are infringed.

## DIVISIONAL ASSIGNMENT

38. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this Intellectual Property Rights Action will be assigned on a district-wide basis.

## PATENTS-IN-SUIT

39. The '952 Patent, entitled "High performance wireless networks using distributed control," issued on September 2, 2008. A true and correct copy of the '952 Patent is attached as Exhibit 1.

40. The '243 Patent, entitled "High performance wireless networks using distributed control," issued on February 8, 2011. A true and correct copy of the '243 Patent is attached as Exhibit 2.

41. The '385 Patent, entitled "Mobility extensions for wireless multiple radio mesh," issued on February 22, 2011. A true and correct copy of the '385 Patent is attached as Exhibit 3.

42. The '691 Patent, entitled "Persistent mesh for isolated mobile and temporal networking," issued on August 27, 2013. A true and correct copy of the '691 Patent is attached as Exhibit 4.

43. The '537 Patent, entitled "High performance wireless network," issued on June 21, 2022. A true and correct copy of the '537 Patent is attached as Exhibit 5.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment That Cisco Does Not Infringe The '952 Patent)

44. Cisco repeats and re-alleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Cisco and Defendants regarding whether Cisco infringes any claim of the '952 Patent.

46. Cisco does not infringe, and has not infringed, literally or under the doctrine of equivalents, any claim of the '952 Patent. For example, the '952 Patent has two independent claims (*i.e.*, claims 1 and 12) and MeshDynamics identified claim 1 as an exemplary allegedly infringed claim in its complaint in the 472 Litigation and accused the 472 Litigation Accused Products. Claim 1 is reproduced below (brackets added):

> [1pre] A method of controlling a wireless mesh network, comprising:
>
> [1a] configuring the wireless mesh network with a first configuration, the wireless mesh network comprising a plurality of relay nodes, each of the relay nodes being capable of relaying traffic from a child node associated with the relay node, each of the relay nodes including a first radio interface configurable to relay traffic to a parent relay node and a

second dual purpose radio interface configurable to both relay traffic from the child relay node and to communicate with a client node that is not a relay node, and at least one of the relay nodes is configured in the first configuration to relay traffic from a child relay node to a parent relay node;

[1b] determining that a first one of the plurality of relay nodes in the wireless mesh network requires a channel selection change;

[1c] dynamically selecting a second one of the plurality of relay nodes in the wireless mesh network to form a parent-child relationship with the first relay node; and

[1d] making a channel selection change;

[1e] wherein prior to being dynamically selected, the second relay node was a sibling node of the first relay node; and

[1f] making a channel selection includes making a channel selection change to meet a performance requirement.

47.   For example, the 472 Litigation Accused Products do not infringe at least the following claim limitations of the '952 Patent: [1a] "configuring the wireless mesh network with a first configuration, the wireless mesh network comprising a plurality of relay nodes, each of the relay nodes being capable of relaying traffic from a child node associated with the relay node, each of the relay nodes including a first radio interface configurable to relay traffic to a parent relay node and a second dual purpose radio interface configurable to both relay traffic from the child relay node and to communicate with a client node that is not a relay node, and at least one of the relay nodes is configured in the first configuration to relay traffic from a child relay node to a parent relay node"; [1d] "making a channel selection change"; and [1e] "wherein prior to being dynamically selected, the second relay node was a sibling node of the first relay node."

48.   Cisco is entitled to judgment declaring that it has not infringed and does not infringe the '952 Patent.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment That Cisco Does Not Infringe The '243 Patent)

49.   Cisco repeats and re-alleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

50. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Cisco and Defendants regarding whether Cisco infringes any claim of the '243 Patent.

51. Cisco does not infringe, and has not infringed, literally or under the doctrine of equivalents, any claim of the '243 Patent. For example, the '243 Patent has four independent claims (*i.e.*, claims 1, 9, 12, and 13) and MeshDynamics identified claim 12 as an exemplary allegedly infringed claim in its complaint in the 472 Litigation and accused the 472 Litigation Accused Products. Claim 12 is reproduced below (brackets added):

> [12pre] A wireless mesh network comprising:
>
> [12a] an access server wherein the access server sets one or more functioning parameters of the wireless mesh network;
>
> [12b] one or more root nodes connected to said access server and an external network;
>
> [12c] one or more AP nodes wherein each AP node is in wireless two-way data communication with an associated parent node wherein said associated parent node is selected from all available parent nodes wherein an available parent node is another AP node within wireless communication range of the AP node and the associated parent node is an available parent node meeting one or more communication criteria or the associated parent node is a root node within wireless communication range;
>
> [12d] wherein an AP node is in wireless communication with zero or more clients; and
>
> [12e] wherein an AP node includes a means for switching two-way data communication from a first associated parent node to a second associated parent node based on the functioning parameters of the wireless mesh network and wherein an AP node contains one or more datasets
>
> [12f] wherein one of the datasets contained in an AP node comprises a route path dataset comprising an identifier for the associated parent node appended to the route path dataset for the associated parent node
>
> [12g] wherein the communication criteria comprises instructions for the AP node to select the associated parent node wherein an available parent node is selected to become the associated parent node if the available parent node is in wireless communication with a root node or if a root node is contained in the available parent node's route path dataset; and

[12h] wherein the communication criteria further comprises instructions for the AP node to associate with a single suitable parent node wherein the route path dataset of the parent node is the shortest route path dataset of all available parent nodes.

52. For example, the 472 Litigation Accused Products do not infringe at least the following claim limitations of the '243 Patent: [12pre] "a wireless mesh network"; [12e] "wherein an AP node includes a means for switching two-way data communication from a first associated parent node to a second associated parent node based on the functioning parameters of the wireless mesh network and wherein an AP node contains one or more datasets"; [12f] "wherein one of the datasets contained in an AP node comprises a route path dataset comprising an identifier for the associated parent node appended to the route path dataset for the associated parent node"; [12g] "wherein the communication criteria comprises instructions for the AP node to select the associated parent node wherein an available parent node is selected to become the associated parent node if the available parent node is in wireless communication with a root node or if a root node is contained in the available parent node's route path dataset"; and [12h] "wherein the communication criteria further comprises instructions for the AP node to associate with a single suitable parent node wherein the route path dataset of the parent node is the shortest route path dataset of all available parent nodes."

53. Cisco is entitled to judgment declaring that it has not infringed and does not infringe the '243 Patent.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment That Cisco Does Not Infringe The '385 Patent)

54. Cisco repeats and re-alleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

55. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Cisco and Defendants regarding whether Cisco infringes any claim of the '385 Patent.

56. Cisco does not infringe, and has not infringed, literally or under the doctrine of equivalents, any claim of the '385 Patent. For example, the '385 Patent has three independent claims

(*i.e.*, claims 1-3) and MeshDynamics identified claim 2 as an exemplary allegedly infringed claim in its complaint in the 472 Litigation and accused the 472 Litigation Accused Products. Claim 2 is reproduced below (brackets added):

[2pre] A mesh network comprising:

[2a] a plurality of mesh nodes; wherein

[2b] at least one mesh node of the mesh network is configured to scan a Radio Frequency (RF) environment using a dedicated scanning radio to determine a new potential parent mesh node for connecting with said at least one mesh node; wherein

[2c] said at least one mesh node includes, in addition to the scanning radio, at least two relay radios in each mesh element and wherein said scanning radio and said at least two relay radios operate on different non-interfering channels;

[2d] wherein while said at least one mesh node samples potential new parent nodes, packets to be sent to said at least one mesh node from its current parent node are buffered by the current parent node, and packets to be sent from said at least one mesh node to its current parent are buffered by said at least one mesh node;

[2e] wherein sampling times are coordinated among multiple mesh nodes having a common current parent node whereby the common current parent node sends tokens to each of its children in a round-robin manner.

57. For example, the 472 Litigation Accused Products do not infringe at least the following claim limitations of the '385 Patent: [2pre] "a mesh network"; [2b] "at least one mesh node of the mesh network is configured to scan a Radio Frequency (RF) environment using a dedicated scanning radio to determine a new potential parent mesh node for connecting with said at least one mesh node;" [2c] "said at least one mesh node includes, in addition to the scanning radio, at least two relay radios in each mesh element and wherein said scanning radio and said at least two relay radios operate on different non-interfering channels"; [2d] "wherein while said at least one mesh node samples potential new parent nodes, packets to be sent to said at least one mesh node from its current parent node are buffered by the current parent node, and packets to be sent from said at least one mesh node to its current parent are buffered by said at least one mesh node"; and [2e] "wherein sampling times are

coordinated among multiple mesh nodes having a common current parent node whereby the common current parent node sends tokens to each of its children in a round-robin manner."

58. Cisco is entitled to judgment declaring that it has not infringed and does not infringe the '385 Patent.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment That Cisco Does Not Infringe The '691 Patent)

59. Cisco repeats and re-alleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

60. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Cisco and Defendants regarding whether Cisco infringes any claim of the '691 Patent.

61. Cisco does not infringe, and has not infringed, literally or under the doctrine of equivalents, any claim of the '691 Patent. For example, the '691 Patent has three independent claims (*i.e.*, claims 1, 20 and 35) and MeshDynamics identified claim 1 as an exemplary allegedly infringed claim in its complaint in the 472 Litigation and accused the 472 Litigation Accused Products. Claim 1 is reproduced below (brackets added):

> [1pre] A structured mesh network capable of isolated operation, comprising:
>
> [1a] at least two structured mesh nodes;
>
> [1b] wherein each structured mesh node comprises at least a connectivity logic;
>
> [1c] an uplink radio operating on an uplink frequency and a downlink radio operating on a distinct downlink frequency;
>
> [1d] wherein the connectivity logic determines whether each structured mesh node connects with an external network or another node using its uplink radio and client devices or other mesh nodes connect to each node using each node's downlink radio;
>
> [1e] wherein the structured mesh network functions in two configurations selected depending on whether a connection to an external network is present;

[1f] in the first connected configuration the structured mesh network includes at least one structured mesh node's uplink radio comprising a connection to an external network; and in the second isolated configuration none of the structured mesh nodes' uplink radio comprises a connection to an external network, and one of the structured mesh nodes acts as an isolated network root of the isolated configuration and all remaining nodes connect to the isolated network root node as isolated root children nodes forming a tree configuration;

[1g] wherein clients of nodes of the structured network in a second isolated configuration retain full connectivity within the structured network during the isolated configuration and wherein said client connectivity is uninterrupted during any transition from the isolated configuration to the first connected configuration; wherein distinct downlink frequencies are used by nodes for communication with one or more nodes lower on the tree configuration.

62. For example, the 472 Litigation Accused Products do not infringe at least the following claim limitations of the '691 Patent: [1pre] "A structured mesh network capable of isolated operation"; [1c] "an uplink radio operating on an uplink frequency and a downlink radio operating on a distinct downlink frequency"; [1d] "wherein the connectivity logic determines whether each structured mesh node connects with an external network or another node using its uplink radio and client devices or other mesh nodes connect to each node using each node's downlink radio"; [1f] "in the first connected configuration the structured mesh network includes at least one structured mesh node's uplink radio comprising a connection to an external network; and in the second isolated configuration none of the structured mesh nodes' uplink radio comprises a connection to an external network, and one of the structured mesh nodes acts as an isolated network root of the isolated configuration and all remaining nodes connect to the isolated network root node as isolated root children nodes forming a tree configuration"; and [1g] "wherein clients of nodes of the structured network in a second isolated configuration retain full connectivity within the structured network during the isolated configuration and wherein said client connectivity is uninterrupted during any transition from the isolated configuration to the first connected configuration; wherein distinct downlink frequencies are used by nodes for communication with one or more nodes lower on the tree configuration".

63. Cisco is entitled to judgment declaring that it has not infringed and does not infringe the '691 Patent.

## FIFTH CLAIM FOR RELIEF

## (Declaratory Judgment That Cisco Does Not Infringe The '537 Patent)

64. Cisco repeats and re-alleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

65. In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Cisco and Defendants regarding whether Cisco infringes any claim of the '537 Patent.

66. Cisco does not infringe, and has not infringed, literally or under the doctrine of equivalents, any claim of the '537 Patent. For example, the '537 Patent has three independent claims (*i.e.*, claims 1, 17 and 18) and MeshDynamics identified claim 1 as an exemplary allegedly infringed claim in its complaint in the 472 Litigation and accused the 472 Litigation Accused Products. Claim 1 is reproduced below (brackets added):

> [1pre] A wireless mesh network comprising:
>
> [1a] a plurality of Wi-Fi nodes in the wireless mesh network organized in a tree shape;
>
> [1b] an access server in data communication with the nodes, wherein the nodes are comprised of:
>
> [1c] one or more root access point (RAP) nodes having a wired connection to an external network;
>
> [1d] one or more mesh access point (MAP) nodes;
>
> [1e] wherein a MAP node is in a data communication with the external network through an associated RAP node;
>
> [1f] wherein the MAP node is in a direct wireless data communication with a single associated parent node, wherein the associated parent node is either the associated RAP node, or another MAP node in a data communication with the external network through its associated RAP node;

[1g] wherein the MAP node automatically connects to the associated parent node by selecting the single associated parent node from one or more potential parent nodes that are within a direct wireless communication range of the MAP node and establishing a parent-child relationship with the associated parent node, process for the automatic connection comprising:

[1h] selecting a parent node from the one or more potential parent nodes based at least in part on one or more parent selection criteria defined by the access server, wherein the parent node so selected is the associated parent node; and

[1i] establishing a direct wireless data connection between the MAP node and the associated parent node;

[1j] wherein the automatic connection process establishes the MAP node's routing path to the external network;

[1k] the one or more parent selection criteria comprising:

[1l] a throughput value representing signal strength between two nodes; and

[1m] a latency value representing number of hops in a routing path;

[1n] the MAP node comprising:

[1o] one or more identifier values representing a unique identity of the MAP node in the wireless mesh network;

[1p] two or more radios for wirelessly communicating with another node or a client device in the wireless mesh network.

67. For example, the 472 Litigation Accused Products do not infringe at least the following claim limitations of the '537 Patent: [1pre] "A wireless mesh network"; [1a] "a plurality of Wi-Fi nodes in the wireless mesh network organized in a tree shape"; [1h] "selecting a parent node from the one or more potential parent nodes based at least in part on one or more parent selection criteria defined by the access server, wherein the parent node so selected is the associated parent node"; [1k] "the one or more parent selection criteria comprising"; [1l] "a throughput value representing signal strength between two nodes"; and [1m] "a latency value representing number of hops in a routing path."

68. Cisco is entitled to judgment declaring that it has not infringed and does not infringe the '537 Patent.

## PRAYER FOR RELIEF

69. Cisco respectfully requests the following relief:

   A. That the Court enter a judgment declaring that Cisco has not infringed and does not infringe any claim of the '952 Patent;

   B. That the Court enter a judgment declaring that Cisco has not infringed and does not infringe any claim of the '243 Patent;

   C. That the Court enter a judgment declaring that Cisco has not infringed and does not infringe any claim of the '385 Patent;

   D. That the Court enter a judgment declaring that Cisco has not infringed and does not infringe any claim of the '691 Patent;

   E. That the Court enter a judgment declaring that Cisco has not infringed and does not infringe any claim of the '537 Patent;

   F. That the Court declare that this case is exceptional under 35 U.S.C. § 285 and award Cisco its attorneys' fees, costs, and expenses incurred in this action;

   G. That the Court award Cisco any and all other relief to which Cisco may show itself to be entitled; and

   H. That the Court award Cisco any other relief the Court deems just, equitable, and proper.

## JURY DEMAND

Cisco hereby demands a jury trial on all issues and claims so triable.

Dated: July 31, 2025

/s/ Michael R. Rhodes
Michael R. Rhodes (CA SBN 319432)
mrhodes@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Counsel for Plaintiff Cisco Systems, Inc.*

COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT        15        Case No. _____